UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

ROBIN C. ANDERSON,            )
                              )
                              )
      *Plaintiff,*            )
v.                            )   No.1:07-cv-43
                              )   *Edgar*
THE UNION CENTRAL LIFE        )
INSURANCE COMPANY and FIRST   )
HORIZON NATIONAL              )
CORPORATION d/b/a FIRST       )
TENNESSEE BANK,               )
                              )
      *Defendants.*           )

**MEMORANDUM AND ORDER**

Plaintiff Robin C. Anderson initially brought her complaint in the Chancery Court of Hamilton County, Tennessee. [Court Doc. No. 1-2]. Defendants Union Central Life Insurance Company ("UCLIC") and First Horizon National Corporation ("FHNC") (collectively "Defendants") removed the action to this Court. [Court Doc. No. 1]. Defendants have now moved to dismiss Plaintiff's state law claims, as well as for a more definite statement. [Court Doc. No. 2]. Plaintiff moves to remand this action to state court. [Court Doc. No. 4]. This Court has reviewed the record and the arguments of the parties and has determined that the parties must supplement the record and provide further briefing regarding whether this Court has jurisdiction over this action.

   **I.    Background**

The complaint states that "[t]his case arises out of the wrongful termination of a life insurance policy or expressed agreement upon plaintiff's life on December 31, 2006, upon which

plaintiff and her deceased husband paid premiums out of a joint bank account for approximately 18 years." Complaint, ¶ I. The Complaint alleges that Plaintiff's husband worked for FHNC for twenty-five years before becoming disabled and being placed on long-term disability. *Id.* at ¶ II. Plaintiff further asserts in her complaint that UCLIC issued a group life insurance policy to FHNC. Plaintiff's husband apparently enrolled in the group plan, and FHNC deducted premiums for life insurance from his paycheck until he became disabled in 1995. *Id.* After 1995 Plaintiff alleges that her husband's premiums were waived, but that she maintained a life insurance policy through her husband's group policy and that the couple paid the premiums out of their joint bank account. *Id.*

After the Plaintiff's husband died on July 19, 2006, FHNC refunded the premiums Plaintiff and her husband had paid for Plaintiff's policy from August 2006 through December 2006. FHNC further informed Plaintiff that it had terminated her policy on the date of her husband's death. Complaint, ¶ III. Plaintiff refused to deposit the check and "rejected the wrongful termination." *Id.* Plaintiff alleges in her complaint that she "requested information from [FHNC] as to the procedure she would be eligible to continue her life insurance coverage through [FHNC] or otherwise convert it to an individual policy, by letter dated August 22, 2006." *Id.*

Plaintiff alleges she received a letter from FHNC indicating that she was not entitled to a conversion life insurance policy. Complaint, ¶ IV. Plaintiff attaches two unauthenticated letters to her motion to remand that appear to be from FHNC and UCLIC. The first letter from FHNC dated October 13, 2006 indicates that "[a]fter careful review Union Central Life Insurance has determined that they will not be able to convert your Dependent Life Insurance to an outside

policy." [Court Doc. No. 4-1]. A letter from UCLIC to FHNC dated October 10, 2006 states that "[t]his letter is to advise you that after review of the Policy for the above listed Policyholder, the Premium Waiver Provision does not apply to dependents of the insured. Therefore, the conversion option would not apply to those dependents." *Id.*

Plaintiff's complaint alleges that the group life insurance policy plainly provides for conversion. The record includes a copy of the UCLIC Group Insurance Policy (the "Policy"). The Policy indicates that "Dependent Term Life Insurance" is available. The Policy also contains a section describing a "conversion privilege" for dependent term life insurance policies. [Court Doc. No. 7-2, p. 20].

Plaintiff's complaint alleges that UCLIC's denial of her right to a conversion policy "was fraudulent and issued to her to defeat her rights for which she paid a premium since 1988." Complaint, ¶ VI. It further contends that she never received a copy of the Policy and that she relied upon an "implied agreement that she would be entitled to insurance upon the term of her life upon the continued payment of a premium." *Id.* Plaintiff finally alleges that she "was compelled to pay a separate premium upon her life insurance policy for an additional eleven (11) years after her husband's disability commenced." *Id.* The complaint seeks relief in the form of forty thousand dollars, or the face value of the policy, for the "wrongful termination" of the Policy and forty thousand dollars as punitive damages for the "misrepresentation and fraudulent termination of her policy." Complaint, ¶ VI. The complaint states no federal cause of action, nor does it cite to any federal statutes.

**II.     Analysis**

Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Further, 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The defendant seeking removal has the burden of proving jurisdiction in the district court. *See Williamson v. Aetna Life Ins. Co.*, __ F.3d ___, 2007 WL 845862 *4 (6th Cir. 2007). The Sixth Circuit has cautioned that " '[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.' " *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-550 (6th Cir. 2006) (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)).

Defendant removed the case to this Court pursuant to 28 U.S.C. § 1331 alleging federal question jurisdiction because Plaintiff's complaint relates to rights arising under the terms of a group life insurance policy governed exclusively by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Defendants allege that because Plaintiff claims to be the beneficiary of an "employee benefit plan" as that term is defined under ERISA, her remedy lies solely with ERISA, 29 U.S.C. § 1132(a)(1)(B). Defendants further argue that Plaintiff's state law claims are pre-empted by ERISA.

ERISA provides in Section 502(a) that either a participant or a beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). In addition, 29 U.S.C. § 1144(a) states in part, ". . . the provision of

this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

In her motion to remand, Plaintiff argues that her state law claims are not pre-empted by ERISA because the claims relate to the failure of UCLIC to issue a conversion policy, which would have been an individual policy not governed by the group Policy and with no connection to an ERISA plan. Plaintiff does not dispute Defendants' contention that the Policy is an "employee benefit plan" as defined by ERISA.

Plaintiff's complaint does not mention any federal statutes. Generally, only complaints that raise issues of federal law are subject to federal question removal pursuant 28 U.S.C. § 1331. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). This is known as the "well-pleaded complaint rule." *Id.*

In addition, federal pre-emption and complete pre-emption allowing for removal are two different concepts. *See Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995). "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life Ins. Co.*, 481 U.S. at 64, 107 S.Ct. at 1547. As explained by the U.S. Supreme Court:

> [f]ederal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. . . . One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Id.* 481 U.S. at 63-64, 107 S.Ct. at 1546. The Supreme Court held that Congress "clearly manifested an intent to make causes of action within the scope of the civil enforcement

provisions of § 502(a) removable to federal court." *Id.* at 66, 107 S.Ct. at 1548.

In *Warner v. Ford Motor Company*, the Sixth Circuit addressed the circumstances under which claims relating to ERISA employee benefit plans are removable to federal court. 46 F.3d 531 (6th

Cir. 1995).

> [Section] 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144. . . .
>
> Removal is allowed in § 1132(a)(1)(B) type cases under *Metropolitan Life* because of the Court's conclusion that Congress intended federal law to occupy the regulated field of pension contract enforcement. State claims for damages or injunctive relief to enforce a pension plan against an employer or trustee are subject to removal. State causes of action not covered by § 1132(a)(1)(B) may still be subject to a preemption claim under § 1144(a) . . . because the state law at issue may "relate to" a pension or employee benefit plan. But such actions are not subject to removal.

*Id.* at 534-535. In other words, "only if the claim is 'completely preempted' by ERISA, that is, when the action is to recover benefits, enforce rights or clarify future benefits under an ERISA plan, is the action subject to removal to the federal courts." *Wright v. General Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001).

In determining whether complete pre-emption exists, the Sixth Circuit has cautioned that a "court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,' as provided in § 1132(a)(1)(B)." *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (quotation omitted).

The question in this action is whether these Defendants properly removed this action to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. This requires an analysis of whether Plaintiff's claims are claims covered by Section 502(a), the civil enforcement provision of ERISA. 29 U.S.C. § 1132(a). First, this Court must determine whether the Policy is an employee welfare benefit plan and whether Plaintiff is a beneficiary as defined by ERISA. Only then can this Court determine whether Plaintiff's claims are encompassed within 29 U.S.C. § 1132(a) or whether Plaintiff's claims merely "relate to" an ERISA plan such that ordinary pre-emption pursuant to 29 U.S.C. § 1144 applies.

> ERISA defines an "employee welfare benefit plan" in relevant part as
>
> any plan, fund, or program . . . maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . . death . . . .

29 U.S.C. § 1002(1). A life insurance policy, if it meets the other necessary requirements, may constitute an employee welfare benefit plan under ERISA. *See e.g. Unicare Life & Health Ins. Co. v. Craig*, 157 F. App'x 787, 790 (6th Cir. 2005).

Defendants contend that the Policy is obviously an employee welfare benefit plan under ERISA. Plaintiff does not address whether the Policy is an ERISA plan, but appears to concede this point. However, because the issue of whether the Policy constitutes an ERISA plan relates to UCLIC's claim of federal question jurisdiction, this Court will address the question. Federal courts must address whether they have jurisdiction *sua sponte*. *See Federal Trade Comm'n v. Owens-Corning Fiberglass Corp.*, 853 F.2d 458, 464 (6th Cir. 1988); *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628 (6th Cir. 1992); *see also*, Fed. R. Civ. P. 12(h)(3) (stating that "[w]henever it

appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

The Sixth Circuit has articulated a three-part test to utilize in determining whether a benefit plan constitutes an ERISA plan:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. American Home Assurance Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996) (citations and quotations omitted).

As explained by the Sixth Circuit,

> Department of Labor ("DOL") regulations set out a "safe harbor" provision that excludes an employee insurance policy from ERISA coverage if: (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435; *see* 29 C.F.R. § 2510.3-1(j). The "safe harbor" exists only if the employer meets all four of the tests. *Thompson*, 95 F.3d at 435.

In determining whether an employer has endorsed a plan under the third prong of the "safe harbor" test, the Sixth Circuit has found that "employer neutrality is the key" to such a determination. *Thompson*, 95 F.3d at 436. A finding of endorsement may be appropriate:

> if, upon examining all the relevant circumstances, there is some factual showing

-8-

> on the record of substantial employer involvement in the creation or administration of the plan . . . For example, where the employer plays an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits provided thereunder, the extent of employer involvement is inconsistent with "employer neutrality" and a finding of endorsement may be appropriate. . . . Similarly, were the employer is named as the plan administrator, a finding of endorsement may be appropriate. . . . the relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view. . . . Thus, for example, where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework.

*Thompson*, 95 F.3d at 436-437 (citations omitted).

In this action the parties have provided this Court with little information in the record to determine whether the Policy constitutes an ERISA plan. Defendants state several times that the Policy is an ERISA plan and indicate that UCLIC issued the Policy to FHNC, Plaintiff's husband's employer. [Court Doc. No. 6]. The parties agree that Plaintiff's husband was an employee of FHNC and was eligible for the Policy as an employee. Defendants contend that "FHNC was active in the administration of the group policy as it withheld required premiums from plaintiff's husband's wages and remitted those premiums to UCLIC." *Id.* However, Defendants attach no affidavit testimony or other documents indicating FHNC's role in administering the Policy. Defendants also argue that the Policy is an ERISA plan because the Policy states that: "[t]he Policy is delivered in and governed by the laws of Rhode Island and, to the extent applicable, by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto." [Court Doc. No. 7-2]. The Policy also provides that UCLIC has the "sole discretionary authority" to "(1) construe and interpret plan provisions; (2) determine all

questions of eligibility for participation in the plan; and (3) determine, authorize, and direct payment of any benefits provided by the plan." *Id.*

The terms of the Policy itself do not mention FHNC by name, but merely refer to a generic "Covered Employer." Further, it is not clear from the Policy what role FHNC played in administering or endorsing the Policy. UCLIC has the discretion to construe and apply the plan provisions, not FHNC, and two unauthenticated letters attached to Plaintiff's motion to remand appear to confirm UCLIC's role in interpreting the Policy. [Court Doc. No. 4-2]. There is no evidence in the record demonstrating that FHNC had substantial involvement in the creation or administration of the Policy. The parties have not provided the Court with FHNC's summary plan description of the Policy. The Policy itself appears to indicate that UCLIC was principally involved in the administration, creation, and negotiation of the terms of the plan covering any number of generic "Covered Employers." For example, the Policy states that "[t]he Policyholder [Trustee of the Union Central Life Group Life Only Trust] will act for and on behalf of all Covered Employers in matters of this Policy. Every act done by, agreement made with and notice given to the Policyholder will be binding on the Covered Employers." [Court Doc. No. 6-2, 25].

The Court does not doubt that the Policy may be an ERISA plan; however, the record as it currently exists does not clearly establish that FHNC endorsed the Policy or established or maintained the Policy for the benefit of its employees. It is unclear as well to what extent, if any, FHNC contributed to employee premiums under the Policy. FHNC's name and logo appear nowhere on the Policy. The first page of the Policy prominently displays UCLIC's name, but does not mention FHNC in any way. Nor do the terms of the Policy mention FHNC. Although

the Policy mentions ERISA in an amendatory rider, it states that the Policy is governed by Rhode Island law, and to the *extent applicable*, ERISA. This language does not suggest that ERISA alone applies or that the Policy is even an ERISA plan.

Thus, despite Defendants' assertions to the contrary, it is by no means obvious under the current record that the Policy constitutes an "employee welfare benefit plan" as defined by ERISA. *See Thompson*, 95 F.3d at 435-438. If the Policy is not an "employee welfare benefit plan," as defined by ERISA and further explained by its implementing regulations and Sixth Circuit case law, then this Court does not have jurisdiction over this action.

The Defendants have failed to fulfill their burden of demonstrating this Court's jurisdiction over this matter. The record does not demonstrate that the Policy is an "employee welfare benefit plan" as that term is defined in ERISA. Therefore, this Court will order the parties to submit additional materials in the record, as well as additional briefing regarding whether the Policy is an "employee welfare benefit plan" under ERISA and whether this Court has federal question jurisdiction over this matter.

**ORDER**

In accordance with and as explained in the accompanying memorandum opinion, it is **HEREBY ORDERED** that the parties will submit additional briefing and any supplementary materials to this Court regarding this Court's jurisdiction over this action by May 14, 2007.

SO ORDERED.

ENTER this the 24th day of April, 2007.

                                */s/ R. Allan Edgar*
                                R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE